IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ALISSA WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-3395 |
| | : | |
| CHELTENHAM SCHOOL DISTRICT, | : | |
| JESSICA M. KEENE | : | |

## MEMORANDUM

**KEARNEY, J.**                                                        **September 23, 2025**

A mother of school-age children without a permanent home address sues her childrens'
school district and its director of student services for removing her children from the school's
enrollment records without complying with a notice process set by Congress in conjunction with
federal funding of the district. She pro se claims the district and its director violated her civil rights
by not following Congress' mandated notice procedures under the Family Educational Rights and
Privacy Act and the McKinney-Vento Homeless Assistance Act. The district and its director now
move to dismiss the mother's amended Complaint arguing she cannot proceed with a private cause
of action to enforce these two laws by invoking the civil rights laws. We agree in part. The mother
may not proceed on civil rights claims based on alleged violations of the Family Educational
Rights and Privacy Act. But we do not agree with the district and its director as to the mother's
ability to bring a private cause of action under the civil rights laws to enforce the McKinney-Vento
Homeless Assistance Act. The mother may proceed on her civil rights claims under the McKinney-
Vento Homeless Assistance Act.

### I.    Alleged pro se facts

Alissa Williams enrolled her children in Cheltenham School District for an unpleaded
period without ever requesting to change her childrens' school, transportation, or enrollment

status.[1] But then the District's Director of Student Services Jessica Keene began a residency investigation at an unpleaded time without earlier notice.[2] Director Keene cited an annual review process applicable only to McKinney-Vento eligible students as the basis for the investigation.[3] The District did not explain what triggered Director Keene's review, explain Ms. Williams's rights under the McKinney-Vento Act, or address the policy authorizing the investigation.[4] Director Keene unilaterally removed Ms. Williams's children from the District schools at an unpleaded time without providing notice, a hearing, or an opportunity to appeal.[5]

## I.    Analysis

Ms. Williams sues Director Keene and the District under federal civil rights law for violating her rights under the Family Educational Rights and Privacy Act and the McKinney-Vento Homeless Assistance Act.[6] Director Keene and the District now move to dismiss arguing Ms. Williams cannot bring a private right of action to enforce the Family Educational Rights and Privacy Act or the McKinney-Vento Act under the civil rights law.[7] We agree with the District and its director as to the Family Educational Rights and Privacy Act. But we are not persuaded today by the District and its director's argument the Supreme Court's decision almost three months ago in *Medina v. Planned Parenthood S. Atl.* forecloses Ms. Williams's ability to bring a private right of action under the civil rights laws to enforce the McKinney-Vento Act.[8]

### A.    We again dismiss Ms. Williams's claim under the Family Educational Rights and Privacy Act.

Ms. Williams brings a federal civil rights claim on behalf of herself under the Family Educational Rights and Privacy Act. We dismissed this claim in our July 10, 2025 Order.[9] Ms. Williams repeated the dismissed claim in her amended Complaint.

Congress enacted the Family Educational Rights and Privacy Act to protect access to and disclosure of student educational records.[10] The Supreme Court instructed us over twenty years

2

ago Congress did not create a private right of action in the Family Educational Rights and Privacy Act, and the Act is not enforceable through the civil rights law.[11]

We again dismiss Ms. Williams's Family Educational Rights and Privacy Act claim with prejudice.

**B.    Ms. Williams may proceed on her claim under the McKinney-Vento Act.**

Ms. Williams brings a federal civil rights claim on behalf of herself under the McKinney-Vento Act which addresses the District's obligations to unhoused persons relating to education.[12] The District and Director Keene move to dismiss arguing, among other things, Congress did not expressly grant a private right of action in the McKinney-Vento Act.

But there are other ways to find a private right of action. Congress may confer rights through spending-power legislation privately enforceable under the civil rights laws. The Supreme Court set the governing test twenty-three years ago in *Gonzaga University v. Doe* directing we "must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs."[13] "[T]he *Gonzaga* test is satisfied where the provision in question is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'"[14] The Court confirmed *Gonzaga* "sets forth our established method" two years ago in *Health & Hosp. Corp. of Marion Cnty. v. Talevski* when it found an enforceable private right of action under two provisions of the Federal Nursing Home Reform Act.[15] One provision required nursing-home facilities to "protect and promote" residents' "*right* to be free from" unnecessary "physical or chemical restraints" and the other appeared in a subparagraph titled "[t]ransfer and discharge *rights*."[16] The Court found the provisions enforceable because they "expressly" used clear "rights-creating language" the Court in *Gonzaga* demanded.[17]

3

Director Keene and the District argue the Supreme Court's *Medina* decision almost three months ago forecloses the possibility of enforcing the McKinney-Vento Act through federal civil rights law.[18] The facts in *Medina* involved a Medicaid spending-power statute.[19] The Court in *Medina* did not announce a new rule but rather reaffirmed the analytical framework it earlier defined in *Gonzaga* and applied in *Talevski*.[20] A person seeking a private right of action must show Congress (through the statute) "display[s] an 'unmistakable focus' on individuals like the plaintiff" and "'clear[ly] and unambiguous[ly]' uses 'rights creating terms.'"[21] "*Talevski* suppl[ies] the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right."[22] The Court found the Medicaid provision did not create an enforceable private right of action under section 1983 because it did not contain "anything like [the] clear and unambiguous 'rights-creating language'" in *Talevski*.[23] The Court highlighted another Federal Nursing Home Reform Act provision giving "nursing-home residents the *right* to choose their own attending physicians" as "an example almost perfectly on point."[24] "As this language shows, Congress knows how to give a grantee clear and unambiguous notice that, if it accepts federal funds, it may face private suits asserting an individual right to choose a medical provider."[25]

The Court in *Medina* clarified the applicable standard but did not change our July 10, 2025 finding Ms. Williams may proceed on her federal civil rights claim under the McKinney-Vento Act.[26] We are persuaded by Chief Judge Bumb's decision in *Martin v. Piserchia*, holding a parent "can bring a McKinney-Vento claim on her own behalf" through the civil rights law.[27] In *Martin*, a mother enrolled her children in a school district under homelessness status through the McKinney-Vento Act.[28] She later alleged the district and its McKinney-Vento Homeless Education Liaison violated her federal civil rights by refusing to enroll her son in the school she requested, despite her claim they were residing within the district at the time.[29] The district disputed her

4

residency and denied enrollment.[30] The mother sued pro se under the McKinney-Vento Act's Pendency Provision which requires "the child or youth [to] be immediately enrolled in the school in which enrollment is sought, pending final resolution of the dispute, including all available appeals."[31] Chief Judge Bumb held the mother had enforceable rights under the McKinney-Vento Act and granted summary judgment in her favor.[32] Chief Judge Bumb found "McKinney-Vento 'unambiguously confer[s]' rights specifically benefitting homeless children and their parents" under *Gonzaga.*[33] We agree "[t]he Act is replete with statutory language specifically conferring rights on the parents of homeless children."[34] Our Court of Appeals also assumed without deciding parents may sue to enforce the McKinney-Vento Act.[35] We are also mindful other colleagues recognize a parent's ability to proceed with a private right of action under the Act.[36]

Congress through the McKinney-Vento Act authorizes the Secretary of Education to grant funds to states implementing a plan complying with the commands of the Act.[37] A state's plan must describe how the state will ensure local educational agencies comply with certain requirements.[38] One requirement under a subsection titled "Local education agency requirements" is "[t]he local educational agency shall . . . presume that keeping the child or youth in the school of origin is in the child's or youth's best interest, except when doing so is contrary to the *request of the child's or youth's parent* . . . [and] giv[e] priority to the *request of the child's or youth's parent* . . ."[39] If the agency determines it is not in the child's or youth's best interest to attend the school of origin or the school *requested by the parent*, it must provide the *parent* "with a written explanation of the reasons for its determination . . . including information regarding the *right to appeal* . . ."[40]

Congress requires states and school districts obtaining federal funds to exhaust appeals before removing the student in a subsection entitled "Enrollment disputes": "the child or youth shall be immediately enrolled in the school in which enrollment is sought, pending final resolution

5

of the dispute, including *all available appeals*."[41] The *parent* "shall be provided with a written explanation of any decisions . . . including the rights of the *parent* . . . to appeal such decisions."[42] Congress also requires the local education agency liaison must ensure the *parent* is "informed of the educational and related opportunities available to their children and are provided with meaningful opportunities to participate in the education of their children" and "of all transportation services . . . and is assisted in accessing transportation . . ."[43] The liaison must also ensure "public notice of the educational rights of homeless children and youths is disseminated . . . in a manner and form understandable to the *parents* . . ."[44] We, like Chief Judge Bumb, find "[t]ogether, these provisions evidence an unmistakable Congressional intent to confer individually enforceable rights on specific individuals—the parents of children suffering from homelessness."[45]

Congress's language in the McKinney-Vento Act closely resembles the language enforced by the Court in *Talevski*. The requirements appear within a statutory framework unmistakably focused on a specific class—i.e., homeless children and their parents—and impose binding obligations on local educational agencies through clear "rights-creating language." Congress directed each state to adopt a plan to implement and enforce "local educational agency requirements" including duties explicitly "phrased in terms of the persons benefited." Congress gave each state "clear and unambiguous notice that, if it accepts federal funds, it may face private suits asserting an individual right." The McKinney-Vento Act is far more analogous to the enforceable rights provisions in *Talevski* than to the Medicaid provision the Court found insufficient in *Medina*.

But again, there is more. Even where Congress unambiguously confers individual rights, the presumption of enforceability may be rebutted when Congress has either "expressly forbid [section] 1983's use" or "issued the same command implicitly, by creating a comprehensive

6

enforcement scheme that is incompatible with individual enforcement" under the civil rights law.[46] Congress in the McKinney-Vento Act does neither. The Act "lacks any indicia of congressional intent to preclude [section] 1983 enforcement, such as an express private judicial right of action or any other provision that might signify that intent."[47] Congress did not include language expressly foreclosing a section 1983 remedy.[48] Nor did it create a remedial scheme within the McKinney Vento Act incompatible with section 1983 enforcement.[49] Director Keene and the District have not today met their burden to rebut the presumption a parent may enforce her McKinney-Vento rights through the civil rights law.

Ms. Williams pleaded sufficient facts for us to plausibly find the District and Director Keene may have violated the McKinney-Vento Act when they disenrolled Ms. Williams's children without following the dispute resolution process required by Congress in the Act. Ms. Williams may proceed on her civil rights claim under the McKinney-Vento Act.

## II.    Conclusion

We grant in part and deny in part the District's and Director Keene's motion to dismiss. We dismiss Ms. Williams's federal civil rights claim based on the Family Educational Rights and Privacy Act with prejudice. But Ms. Williams may proceed on her federal civil rights claim based on the McKinney-Vento Act.

---

[1] ECF 14 ¶¶ 6—7.

[2] *Id.* ¶ 8.

[3] *Id.* ¶ 9.

[4] *Id.* ¶¶ 9, 12.

[5] *Id.* ¶¶ 13–14.

[6] We presume Ms. Williams lacks permanent housing allowing her to invoke the McKinney-Vento Homeless Assistance Act ("Mc-Kinney Vento Act"). We earlier dismissed Ms. Williams's

children's claims without prejudice to be renewed in an amended pleading should she secure counsel for her children. *See* ECF 8 ¶ 1.b.

[7] ECF 18 at 3. The purpose of Rule 12(b)(6) is to test the sufficiency of the fact allegations in a complaint. *Sanders v. U.S.*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility . . . a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that . . . 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations . . . and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'. . ., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[8] ECF 18 at 1; *Medina v. Planned Parenthood S. Atl.* 606 U.S. ----, 145 S. Ct. 2227 (2025).

[9] ECF 8 ¶ 1.a.

[10] *Gonzaga v. Doe*, 536 U.S. 273, 278 (2002).

[11] *Id.* at 290 (The Family Education Rights and Privacy Act's "nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions. They therefore create no rights enforceable under § 1983."); *see also Howard v. Chester Cnty. Off. of Juv. Prob. & Parole*, 396 F. Supp. 3d 490, 504 (E.D. Pa. 2019); *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 837 (3d Cir. 2009).

8

---

[12] Congress passed the McKinney-Vento Homeless Assistance Act to provide funding to each State including its school districts to address "the critically urgent needs of the homeless." 42 U.S.C. § 11301(b)(2). Congress provides a wide range of support for homeless individuals and families, including specific protections for children and youth in public schools. Congress defines "homeless children and youths" as those "who lack a fixed, regular, and adequate nighttime residence." *Id.* § 11434a(2)(A). This definition includes "children and youths . . . living in motels [or] hotels . . . due to the lack of alternative adequate accommodations." *Id.* § 11434a(2)(B)(i). Congress requires a State accepting federal funding ensure homeless children "equal access to the same free, appropriate public education" and prohibits schools from treating homeless children differently or creating barriers to their enrollment based on their housing situation. *Id.* § 11431(1)-(2).

[13] *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (quoting *Gonzaga*, 536 U.S. at 283, 285–86).

[14] *Id.* at 183 (quoting *Gonzaga*, 536 U.S. at 284, 287).

[15] *Id.* at 181–183 (internal quotation marks omitted).

[16] *Id.* at 181–82 (quoting 42 U.S.C. §§ 1396r(c)(1)(A)(ii); (c)(2)(A)).

[17] *Id.* at 183 (internal quotation marks omitted).

[18] 606 U.S. ----, 145 S. Ct. 2227 (2025).

[19] *Id.* at 2234; *id.* at 2227 ("Located in [42 U.S.C.] § 1396a(a)(23)(A), Medicaid's any-qualified-provider provision, as it is sometimes called, requires States to ensure that 'any individual eligible for medical assistance . . . may obtain' it 'from any [provider] qualified to perform the service . . . who undertakes to provide' it.").

[20] *Id.* at 2233–34 (citing *Gonzaga*, 536 U.S. at 283, 285–86 and *Talevski*, 599 U.S. at 183-86).

[21] *Id.* at 2229 (quoting *Gonzaga*, 536 U. S. at 283 and *Talevski*, 599 U.S. at 183)

[22] *Id.* at 2234.

[23] *Id.* at 2235 (quoting *Talevski*, 599 U.S. at 183).

[24] *Id.* (citing 42 U.S.C. § 1396r(c)).

[25] *Id.*

[26] ECF 8.

[27] No. 23-21669, 2024 WL 3812071, at *8 (D.N.J. Aug. 14, 2024).

[28] *Id.* at *2.

[29] *Id.*

[30] *Id.*

[31] *Id.* at *3, *10 (quoting 42 U.S.C. § 11432(g)(3)(E)(i)).

[32] *Id.* at *16.

[33] *Id.* *12 (quoting *Gonzaga*, 536 U.S. at 283).

[34] *Id.*

[35] *G.S. by J.S. v. Rose Tree Media Sch. Dist.*, 914 F.3d 206, 211 (3d Cir. 2018) (per curiam) (holding the school district must enroll child in suit brought by plaintiff parents under McKinney-Vento Act).

[36] *See, e.g., Stephens v. Gateway Sch. Dist.*, No. 24-1703, 2025 WL 1882839, at *1 (W.D. Pa. July 8, 2025), *reconsideration denied*, No. 24-1703, 2025 WL 1908438 (W.D. Pa. July 10, 2025) (Parent "may continue to pursue her claims for the alleged violation of her own constitutional rights and the alleged violation of her rights under McKinney-Vento Act.") (citing *Martin*, 2024 WL 3812071, at *11); *L.R. ex rel. G.R. v. Steelton-Highspire Sch. Dist.*, No. 10-468, 2010 WL 1433146, at *5–6 (M.D. Pa. Apr. 7, 2010) (issuing a preliminary injunction pending full resolution of school placement dispute under McKinney-Vento Act); *see also K.J. v. Henry Cnty. Sch. Dist.*, No. 18-4251, 2019 WL 13268209, at *9–10 (N.D. Ga. Jan. 9, 2019) (finding school district violated McKinney-Vento Act but denying parent's motion for summary judgment on those claims); *Doe by Doe v. Perille*, No. 18-11875, 2018 WL 5817024, at *6 (D. Mass. Nov. 6, 2018) (considering parent's McKinney-Vento Act claim and denying motion seeking preliminary injunction); *N.J. v. N.Y.*, 872 F. Supp. 2d 204, 214 (E.D.N.Y. 2011) (issuing preliminary injunction pending enrollment dispute under McKinney-Vento Act).

[37] 42 U.S.C. § 11432(a); *see also id.* § 11432(g)(1) ("For any State desiring to receive a grant under this part, the State educational agency shall submit to the Secretary a plan to provide for the education of homeless children and youths within the State. Such plan shall include the following . . .")

[38] *Id.* § 11432(g)(2) ("Each plan adopted under this subsection shall also describe how the State will ensure that local educational agencies in the State will comply with the requirements of paragraphs (3) through (7).") (under the subsection titled "Compliance").

[39] *Id.* § 11432(g)(3)(B)(i)–(ii) (emphasis added).

[40] *Id.* § 11432(g)(3)(B)(iii) (under the subsection titled "Local education agency requirements") (emphasis added).

[41] *Id.* § 11432(g)(3)(E)(i) (emphasis added).

[42] *Id.* § 11432(g)(3)(E)(ii) (emphasis added); *see also id.* § 11432(g)(3)(E)(iii) ("The parent . . . shall be referred to the local educational agency liaison . . . who shall carry out the dispute resolution process . . . as expeditiously as possible after receiving notice of the dispute . . .").

[43] *Id.* § 11432(g)(6)(A)(v), (viii).

[44] *Id.* § 11432(g)(6)(A)(vi) (emphasis added).

[45] *Martin,* 2024 WL 3812071, at \*12 (citing *Gonzaga*, 536 U.S. at 284).

[46] *Talevski*, 599 U.S. at 186 (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005).

[47] *Id.* at 188.

[48] *Id.* at 183.

[49] *Id.* at 187 ("[T]he *sine qua non* of a finding that Congress implicitly intended to preclude a private right of action under § 1983 is incompatibility between enforcement under § 1983 and the enforcement scheme that Congress has enacted.").